**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse 40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** _____

Caption [use short title]

**Motion for:** Stay Pending Appeal of District Court's

Order and Immediate Stay During the

Consideration of This Motion

State of New Jersey, et al. v. United States

Department of Transportation, et al.

Set forth below precise, complete statement of relief sought:

The government requests an immediate

administrative stay of the district court's February 6, 2026,

Order pending resolution of the

government's motion for a stay, as well as a stay

pending final disposition of this appeal.

**MOVING PARTY:** Defendants/Appellants        **OPPOSING PARTY:** Plaintiffs/Appellees

☐ Plaintiff        ☑ Defendant

☑ Appellant/Petitioner        ☐ Appellee/Respondent

**MOVING ATTORNEY:** Tara Schwartz        **OPPOSING ATTORNEY:** Jeremy M. Feigenbaum

[name of attorney, with firm, address, phone number and e-mail]

U.S. Attorney's Office, SDNY

Office of the New Jersey State Attorney General

86 Chambers Street, Floor 3, New York, NY 10007

25 Market Street, Trenton, NJ 08625

212-637-2633; tara.schwartz@usdoj.gov

862-350-5800; jeremy.feigenbaum@njoag.gov

**Court- Judge/ Agency appealed from:** Southern District of New York / Jeannette Vargas

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain): _____

_____

Opposing counsel's position on motion:
☐ Unopposed  ☑ Opposed  ☐ Don't Know

Does opposing counsel intend to file a response:
☑ Yes  ☐ No  ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☑ Yes ☐ No
Has this relief been previously sought in this court?  ☐ Yes ☑ No

Requested return date and explanation of emergency: _____

We request a ruling by Monday, February 9, 1:00 pm. The reason for the emergency is that

if the injunction stands, the government will be irreparably harmed because

it would result in millions of dollars of payments that should not be made and which

the Department of Transportation would be unable to recover.

Is the oral argument on motion requested?  ☐ Yes  ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  ☐ Yes  ☑ No If yes, enter date: _____

**Signature of Moving Attorney:**

_____  **Date:** February 9, 2026  Service : ☑ Electronic  ☐ Other [Attach proof of service]

**Form T-1080** (rev. 10-23)

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

| | |
|---|---|
| STATE OF NEW JERSEY and STATE OF NEW YORK, <br><br> Plaintiffs-Appellees, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, in his official capacity as Secretary of Transportation; FEDERAL RAILROAD ADMINISTRATION; DAVID FINK, in his official capacity as Administrator of the Federal Railroad Administration; FEDERAL TRANSIT ADMINISTRATION; MARCUS J. MOLINARO, in his official capacity as Administrator of the Federal Transit Administration; BUILD AMERICA BUREAU; and DR. MORTEZA FARAJIAN, in his official capacity as Executive Director of the Build America Bureau, <br><br> Defendants-Appellants. | Docket No. 26- <br><br> Emergency Motion for Administrative Stay: Ruling Requested by February 9, 2026, at 1:00 pm |

**Defendants Appellants' Emergency Motion for a Stay Pending Appeal and for an Immediate Stay During the Consideration of This Motion**

### INTRODUCTION

By this emergency application, the government requests a stay pending appeal

of the district court's February 6, 2026, order granting plaintiffs certain contractual

1

relief, as well as an immediate administrative stay pending this Court's resolution of the government's motion for a stay. The district court's order, ostensibly entered as a temporary restraining order in an Administrative Procedure Act action, in substance enjoins the government immediately to pay out more than $200 million on a contract—relief the district court plainly lacks authority to enter. Unless this Court enters an immediate administrative stay by 1:00 pm today, the government will be forced to disburse those sums without any obvious mechanism for recovering them later if the government prevails on appeal. That is irreparable injury. As the Supreme Court has recently made clear, such an order constitutes an appealable injunction, *Dep't of Educ. v. California*, 604 U.S. 650 (2025), and the government is likely to succeed in demonstrating the district court lacked authority under the APA to enter it. This Court's intervention is urgently needed.

New Jersey and New York ("Plaintiffs") sued the U.S. Department of Transportation ("DOT") under the APA, challenging DOT's September 30, 2025, decision to suspend funding to the Gateway Development Commission ("GDC"). GDC is a public authority created by Plaintiffs for the purpose of developing the Hudson Tunnel Project. Plaintiffs do not point to any statute requiring DOT to fund that project or to disburse funds on any particular schedule, nor do they claim themselves to be parties to any contract with the United States. Rather, their complaint asserts DOT violated the APA by failing to honor its contractual

obligations—*i.e.*, DOT acted arbitrarily and capriciously or contrary to law by suspending funding allegedly due to GDC under contract. The remedy Plaintiffs seek is to compel the government to comply with its contractual obligations.

As the Supreme Court has repeatedly explained, however, claims of this kind cannot be brought under the APA. *NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025); *California*, 604 U.S. 650. The APA's "limited waiver of sovereign immunity does not provide the District Court with jurisdiction to adjudicate claims based on [contractual] grants or to order relief designed to enforce any obligation to pay money pursuant to those grants." *NIH*, 145 S. Ct. at 2659. It does not matter that Plaintiffs phrase their claims in terms of reasoned agency decisionmaking, or that they frame their remedy as a request to set aside a funding suspension: an "order vacating the government's decision to terminate grants under the APA is in every meaningful sense an order requiring the government to pay those grants." *NIH*, 145 S. Ct. at 2664 (Gorsuch, J., concurring in part and dissenting in part).

The district court believed these principles were inapplicable because Plaintiffs are not parties to the contracts; but as the Ninth Circuit recently recognized, that cuts *against* allowing APA review. *Thakur v. Trump*, No. 25-4249, __ F.4th __, 2025 WL 3760650, at *3 (9th Cir. Dec. 23, 2025). It would make no sense to allow indirect recipients of grant funding to bring APA claims challenging grant

3

terminations while barring direct recipients of the grants from bringing those same claims. This case belongs in the Court of Federal Claims.

Indeed, at the same time Plaintiffs filed this action, GDC filed a breach-of-contract action in the Court of Federal Claims against the United States. *GDC v. United States*, No. 26 Civ. 176, ECF No. 1 (Ct. Fed. Cl. Feb. 2, 2026) ("GDC Complaint"). GDC contends "[t]his is a straightforward breach of contract case." *Id.* ¶ 1. That is correct, and is why the district court lacks jurisdiction over this action under the Tucker Act, and its order granting relief to Plaintiffs was error.

This Court's immediate intervention is required to prevent irreparable harm to the government. Absent an administrative stay from this Court by 1:00 pm, the government will be forced to pay more than $200 million with no mechanism for recovering. The government therefore respectfully requests that the Court grant an immediate administrative stay pending its consideration of this motion and a full stay of the district court's TRO pending the government's appeal.[1]

---

[1] Per Fed. R. App. P. 8(a), the government, in opposing the TRO motion, requested a stay if the TRO were granted, which the district court implicitly denied. A motion to confirm that denial was filed this same day.

## STATEMENT

### I.     Factual Background

#### A.     The HTP Grant and Loan Agreements

GDC is a corporation created by Plaintiffs through statutes for those states' benefit. ECF No. 1 ("Complaint") ¶ 6, Ex. 24.[2] In 2023, Plaintiffs, Amtrak, and GDC entered into a Project Development Agreement tasking GDC with development, design, and construction of the Hudson Tunnel Project. *Id*. ¶ 6. Plaintiffs and Amtrak committed to contributing one-third of GDC's operating budget. *Id*.

In 2024 the government entered into several grant and loan agreements (the "HTP Grant and Loan Agreements" or "Agreements") with GDC providing over $14 billion in funding to support the Hudson Tunnel Project. ECF No. 43 ("Hawkins Decl.") ¶¶ 2(a)-(d). Each of the Agreements is executed between DOT, or a component thereof, and GDC. *Id*. Exs. A-G. The terms of each Agreement govern breaches or defaults; the circumstances in which DOT may withhold funding from GDC or suspend GDC's drawdown of funds; and attendant procedural requirements. Hawkins Decl. ¶ 4.

On September 30, 2025, DOT notified GDC that DOT was reviewing the projects it funds to ensure nondiscrimination in its financial assistance programs, and that this review applied to the Hudson Tunnel Project. Compl., Ex. 1. DOT

---

[2]     References to ECF are to the district court docket.

informed GDC it would temporarily pause reimbursements for the project during this administrative review. *Id*.

### B. The Court of Federal Claims Action

On February 2, 2026, one day before this action was filed in district court, GDC filed a breach-of-contract action in the Court of Federal Claims. GDC alleges the Agreements require payment of a request for reimbursement of eligible costs within 30 days; allow for withholding of payments from GDC only in narrow circumstances; and allow for withholding of payments from GDC only after providing GDC notice and an opportunity to cure the alleged breach or noncompliance. GDC Compl. ¶ 12.

According to GDC, DOT's suspension of payments is a breach of the express terms of the Agreements. *Id*. ¶ 16. GDC claims DOT did not state in the September 30, 2025, letter that it had determined GDC was in breach or had failed to comply with any law or terms of the Agreements, nor did DOT afford GDC the contractually required notice and opportunity to cure before suspending payment. *Id*. ¶ 150. GDC thus claims DOT's withholdings lack any contractual basis. *Id*. ¶ 173.

GDC requests, among other things, $205,275,358 in damages for DOT's failure to make required payments and disbursements, and additional damages for the costs of the resulting work suspension. *Id*. Prayer for Relief.

At the same time it filed its complaint, GDC moved to expedite. No. 26 Civ. 176, ECF No. 2 (Ct. Fed. Cl. Feb. 2, 2026). The court has yet to rule on that motion.

## II.  Plaintiffs' Complaint and the Proceedings Below

Plaintiffs filed their complaint in this matter on February 3, 2026. They assert two claims under the APA. Compl. ¶ 7. Count I asserts DOT violated the APA by suspending funding under the Agreements without observing procedures required by OMB and DOT regulations. Compl. ¶¶ 120-29. Count II alleges the suspension of funding was arbitrary and capricious because DOT did not offer a reasoned explanation for its decision; DOT had an improper motive for suspending funding disbursements; and DOT provided no evidence of a considered basis for terminating or suspending funding. *Id*. ¶¶ 130-41. The Complaint requests a declaration that the September 30 Suspension and its implementation are unlawful and an order vacating it and setting it aside. *Id*. Prayer for Relief.

The same day Plaintiffs filed their complaint they also sought a temporary restraining order. ECF No. 11. The government responded on February 6, 2026 (ECF Nos. 41, 43), and the district court held a hearing that day. The district court then enjoined the government from implementing the September 30, 2025, suspension of federal disbursements. ECF No. 45 ("TRO Order") 6. The court recognized the Tucker Act applies to all claims based "upon any express or implied contract with the United States." *Id*. at 7-8. However, the court reasoned that because the APA

establishes a "basic presumption of judicial review" of agency action, and Plaintiffs would not be able to sue in the Court of Federal Claims as nonsignatories to the Agreements, there must be jurisdiction in the district court over Plaintiffs' APA claims. TRO Order 8. The court also ruled Plaintiffs would suffer irreparable harm absent injunctive relief. TRO Order 9.

## ARGUMENT

Under Fed. R. App. P. 8(a) and the All Writs Act, 28 U.S.C. 1651, the Court may vacate a district order's interlocutory order granting emergency relief. *E.g.*, *Hedges v. Obama*, No. 12-3176, dkt. entry 39 (2d Cir. Sept. 17, 2012); *see Trump v. International Refugee Assistance Project*, 582 U.S. 571 (2017) (per curiam). In granting a stay pending appeal, the Court considers: (1) whether the applicant has made a strong showing it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other interested parties; and (4) the public interest. *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

An immediate administrative stay should be entered pending resolution of this motion. The order's styling as a "TRO" does not preclude appellate review under 28 U.S.C. § 1292(a). *California*, 604 U.S. at 651. Where an order has the practical effect of granting an injunction, it is appealable. *Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1005 (6th Cir. 2006). The district court's order requires DOT to

8

immediately expend millions of dollars it will be unable to recover even if it later prevails. "When a TRO does not merely preserve the status quo pending further proceedings, but rather directs action so potent with consequences so irretrievable, [courts] provide an immediate appeal to protect the rights of the parties." *Id*. (quotation marks omitted).

## I.     The Tucker Act Precludes the District Court's Jurisdiction

### A.     The Court of Federal Claims Has Exclusive Jurisdiction over Breach of Contract Claims Against the Government

The government is subject to suit only when it has explicitly waived sovereign immunity. *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). Waivers of sovereign immunity must be strictly construed in favor of the government. *Lane v. Pena*, 518 U.S. 187, 192 (1996).

In the APA, Congress provided a limited waiver of sovereign immunity for claims against the United States by persons "adversely affected . . . by agency action" who "seek[] relief other than money damages." 5 U.S.C. § 702. That waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id*.

For contract claims against the government, the Tucker Act establishes review in the Court of Federal Claims. 28 U.S.C. § 1491. When it applies, Tucker Act jurisdiction precludes jurisdiction in district courts. *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

A litigant whose claim is essentially contractual cannot "avoid the jurisdictional (and hence remedial) restrictions of the Tucker Act" by simply asking for injunctive relief in district court. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982); *see Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (district court lacks jurisdiction if claim "is in 'its essence' contractual"). The Tucker Act thus forbids an APA action seeking injunctive and declaratory relief if that action is a disguised breach-of-contract claim. *See NIH*, 145 S. Ct. at 2658; *California*, 604 U.S. at 650.

"Whether a claim is in essence a contract claim over which the Court of Federal Claims has exclusive jurisdiction depends on a two-pronged analysis: a court must examine both 'the source of the rights upon which the plaintiff bases [his] claims, and . . . the type of relief sought.' " *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 406 (2d Cir. 2015) (quoting *Megapulse*, 672 F.2d at 968). This jurisdictional inquiry does not turn on a plaintiff's preferred characterization of its claim.

### i. *California* and *NIH* Control

The Supreme Court's orders in *California* and *NIH* foreclose Plaintiffs' attempt to bring APA challenges seeking the restoration of government funding under grant contracts. *See Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (Supreme Court's "interim orders . . . inform how a court should exercise its equitable discretion in like cases"); *NIH,* 145 S. Ct. at 2664 (Gorsuch, J., concurring in part

and dissenting in part) ("reasoning" of Supreme Court decisions regarding interim relief "binds lower courts as a matter of vertical *stare decisis*").

In *California*, the plaintiffs challenged, under the APA, the Department of Education's termination of education-related grants. 604 U.S. at 650. They sought a temporary restraining order against terminating the grants and requiring payment of past-due and ongoing obligations. *Id*. The district court had found plaintiffs were likely to succeed on the merits of their claim. *California v. Dep't of Educ.*, 769 F. Supp. 3d 72, 76-78 (D. Mass. 2025). The district court held the Tucker Act did not preclude jurisdiction because the plaintiffs invoked federal statutes and regulations and did not style their action as one for money damages. *Id*. at 76, 80.

The Supreme Court stayed the district court's order. 604 U.S. 650. As the Court explained, the district court had "enjoin[ed] the Government from terminating" grants and "require[d] the Government to pay out past-due grant obligations and to continue paying grant obligations as they accrue." *Id*. But the district court likely lacked jurisdiction because the APA's waiver of sovereign immunity "does not extend to orders to enforce a contractual obligation to pay money along the lines of what the District Court ordered." *Id.* at 651 (quotation marks omitted). Instead, such suits must be brought in the Court of Federal Claims, in which Congress vested "jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* (quoting 28 U.S.C. § 1491(a)(1)).

11

That decision reflects the longstanding principle that a disguised breach-of-contract claim belongs in the Court of Federal Claims. The Department of Education's grant agreements had "the essential elements of a contract"—offer, acceptance, and consideration. *Henke v. Dep't of Commerce*, 83 F.3d 1445, 1450-1451 (D.C. Cir. 1996). And those grant agreements were "the source of the rights upon which" the plaintiffs based their claims. *Megapulse*, 672 F.2d at 968. Without a grant agreement, the plaintiffs would have had no right to payment in the first place.

The Supreme Court reiterated its holding in *NIH*. There, the government changed its funding to align with policy priorities mandated by several executive orders and thus terminated numerous grants. 145 S. Ct. at 2660-61 (Barrett, J., concurring in part). The district court concluded the government's decision was arbitrary and capricious under the APA. 791 F. Supp. 3d 119, 179 (D. Mass. 2025). Affirming, the First Circuit reasoned the case could proceed because the district court provided "declaratory relief that is unavailable in the Court of Federal Claims" and the case does not "depend on the terms or conditions of any contract." 145 F.4th 39, 43-44, 47, 50 (1st Cir. 2025). The First Circuit distinguished *California*, reasoning it was limited to an order "to pay out past-due grant obligations." *Id.* at 50-51.

The Supreme Court disagreed and stayed the district court's judgment vacating the government's termination of the individual grants. *NIH*, 145 S. Ct. at 2660. The Supreme Court held the APA's "limited waiver of sovereign immunity does not provide the District Court with jurisdiction to adjudicate claims based on the research-related grants or to order relief designed to enforce any obligation to pay money pursuant to those grants." *Id.* at 2660 (cleaned up).

In light of the Supreme Court's orders in *California* and *NIH*, courts have ruled APA claims, brought by grantees or beneficiaries of government grants, are barred by the Tucker Act. *E.g., Thakur*, 2025 WL 3760650, at *3 (court likely lacked jurisdiction over APA claim that the government's grant termination was arbitrary and capricious because it was designed to enforce obligation to pay money). Because the claims at issue here are in essence contractual, the district court lacks jurisdiction.

### ii. The Source of Plaintiffs' Rights

Even though Plaintiffs, like the plaintiffs in *California* and *NIH*, style their claims as APA challenges, the essence of their complaint is that the government should not have suspended funding to GDC and must continue performing the Agreements. *E.g.*, Compl. ¶ 7 ("the Federal Government pledged billions of dollars to the Project through a series of grant and loan agreements. But on September 30, 2025, without warning, the [DOT] announced a decision to indefinitely suspend payment of all Project funds"). That is contract enforcement. There is no

freestanding statutory obligation requiring continued funding. Plaintiffs cite no legal duty independent of the Agreements requiring funding from the government. Indeed, in the absence of the Agreements, Plaintiffs would have no cause of action at all. Therefore, regardless of the labels Plaintiffs attach to their claims, they are in essence contractual. *See Sustainability Institute v. Trump*, __ F.4th __, No. 25-1575, 2026 WL 157120, at *6 (4th Cir. Jan. 21, 2026) ("alleged statutory and constitutional violations do not alter the essentially contractual nature of Plaintiffs' APA claims before us on appeal"); *Tucson Airport Authority v. General Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998); *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985).

Indeed, the suspension of funding Plaintiffs challenge is actionable only by reference to the Agreements' terms, conditions, and performance requirements. Because no cause of action would exist without the Agreements, Plaintiffs' APA claims are necessarily " 'based on' the . . . grants," *NIH*, 145 S. Ct. at 2658 (quoting *California*, 604 U.S. at 651). To conclude otherwise, and determine Plaintiffs have some independent extra-contractual basis to bring an APA claim, would mean that any beneficiary affected by a federal contract could bypass the Court of Federal Claims, obtain equitable relief in district court, and force continued performance of federal contracts through the APA. That would gut the Tucker Act's exclusivity and undo Congress's deliberate channeling of contract disputes with the United States.

Plaintiffs assert their claims are not precluded by Tucker Act jurisdiction because they do "not contend that DOT violated the terms of a particular agreement . . . [t]hey only ask that, if the federal agencies believe a suspension of Project funding is merited, they adhere to 2 C.F.R. § 200.339 and make any such decision (other than the one announced on September 30) based on reasoned decisionmaking." ECF No. 12 at 12 n.3. This is just a reframing of their APA claims. But the Supreme Court has just recently twice rejected the argument that APA claims challenging the government's decision to terminate or suspend grant funding as contrary to law or arbitrary and capricious are something other than contract claims. *California*, 640 U.S. at 651; *NIH*, 145 S. Ct. at 2660. As in *California* and *NIH*, Plaintiffs' allegations that the government violated law or failed to follow regulations in suspending the Agreements cannot transform this action into one based solely on those laws and regulations. Nor can their claim that the government acted without reason in suspending funding. Those are claims that must be analyzed based on contract principles in the Court of Federal Claims.

### iii.  Plaintiffs' Requested Remedies

The relief Plaintiffs request permanently (and have already obtained temporarily through the TRO Order) sounds in contract. While the district court enjoined the government from implementing the September 30, 2025, suspension of federal disbursements to GDC, that is in all practical realities a direction to begin

performing under the Agreements, i.e., the contractual remedy of specific performance.

Such classic contractual remedies are generally unavailable against the government. *Ingersoll-Rand*, 780 F.2d at 79-80 (order "reinstating the original award of [a] contract . . . amount[ed] to a request for specific performance"). A plaintiff may not use the APA to compel the United States to perform contractual obligations, regardless of whether the relief is characterized as equitable or non-monetary. *Presidential Gardens Assocs. v. U.S. ex rel. Secretary of Housing and Urban Dev.*, 175 F.3d 132, 143 (2d Cir. 1999) ("Actions seeking specific performance of a contract, brought in order to avoid the Tucker Act's limitation on money judgments, are not allowed to be brought against the United States.").

Like the *California* and *NIH* plaintiffs, Plaintiffs seek declaratory and injunctive relief requiring the government to pay money on a contract. Like the *California* and *NIH* plaintiffs, Plaintiffs challenge the termination or suspension decision under the APA. And like the district courts in *California* and *NIH*, the district court "lack[s] jurisdiction . . . under the APA" to compel the government "to pay money" under the grant agreements, *California*, 604 U.S. at 651, or "to order relief designed to enforce any obligation to pay money pursuant to those grants," *NIH*, 145 S. Ct. at 2658 (quotation marks omitted).

16

It is of no moment that Plaintiffs sought only declaratory and injunctive relief to "set aside" the September 30 Suspension. Compl., Prayer for Relief (b). The effect of such relief would be essentially the same as requiring the government to pay. The *NIH* plaintiff similarly "invoked the APA only to vacate the government's decision to terminate" grants rather than seeking past-due sums, and the Supreme Court's stay order affirms that such cases must be heard in the Court of Federal Claims. *NIH*, 145 S. Ct. at 2664 (2025). If plaintiffs could evade the Tucker Act just by requesting declaratory relief, virtually any contract suit could be transmuted into an APA claim. *See U.S. Conf. of Catholic Bishops v. Dep't of State*, 770 F. Supp. 3d 155, 165 (D.D.C. Mar. 11, 2025) ("[T]he [plaintiff] seeks to set aside agency action. But the agency action that it asks the Court to reverse is the Government's decision to cease a financial relationship with the [plaintiff]. This is not standard injunctive fare.").

When Plaintiffs' claim is "[s]tripped of its equitable flair," the "requested relief seeks one thing: . . . the Court to order the Government to stop withholding the money due" under its grant agreements. *Id.* at 163. "In even plainer English: [they] want[] the Government to keep paying up." *Id.* Such a claim for "the classic contractual remedy of specific performance," and one that GDC is already seeking in its parallel action, "must be resolved by the Claims Court." *Id.*

### B. The District Court Erred in Concluding It Had Jurisdiction Because Plaintiffs Cannot Bring an Action in the Court of Federal Claims

Plaintiffs argued below that the Tucker Act does not bar this Court's jurisdiction over their APA claims because they are not signatories to the funding agreements and could therefore not themselves bring an action in the Court of Federal Claims. ECF No. 12 at 12 n.3. The district court agreed, finding it had jurisdiction due to the APA's basic presumption of judicial review. TRO Order 8. That is wrong: the only question is whether Congress's creation of a Tucker Act remedy for contract claims impliedly precludes APA review, even if that leaves Plaintiffs without a remedy.

The court's ruling here cannot be squared with the Supreme Court's recent holdings that courts have no jurisdiction over these types of APA challenges. Neither in *NIH* nor *California* did the Court indicate that its decision hinged on the identity of the party bringing the claims. As *California* came to the Supreme Court, it was disputed whether all the plaintiffs were parties to the contracts. While the plaintiff-states asserted claims of the institutions within those states, the government argued that the states could not sue on their behalf. The First Circuit declined to resolve that dispute, 132 F.4th at 100-01, and the Supreme Court evidently did not regard it as relevant to its determination about the reach of the Tucker Act's preclusion.

Similarly, the plaintiffs in *NIH* included researchers who were not parties to

18

the grant agreements but rather indirect recipients of grant funding. 145 F.4th at 44. The *NIH* plaintiffs argued their claims would not be cognizable in the Court of Federal Claims, *see* APHA Plaintiffs' Stay Opposition at 28-29, *NIH*, 145 S. Ct. 2658 (No. 25A103), 2025 WL 2244206, at *28-29. Yet the Court stayed the district court's order as to *all* plaintiffs without distinguishing between parties and nonparties to the grant agreements.[3]

The district court's decision relies on cases decided before the Supreme Court's stay order in *NIH*. TRO Order 8 (citing *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176-77 (D.C. Cir. 2006); *Community Legal Servs. v. HHS*, 137 F.4th 932, 939 (9th Cir. 2025)). They are also distinguishable. The issue in *Community Legal Services* was whether the plaintiff's claims were contractual, and thus whether the Tucker Act applied at all. Because the court concluded the claims arose from a statute and regulation rather than any contract, it held the Tucker Act did not apply. 137 F.4th at 938-39; s*ee Community Legal Servs. v. HHS*, 155 F.4th 1099, 1104 (9th Cir. 2025) (denying rehearing en banc because the plaintiffs' claims were "grounded in the Government's statutory and regulatory obligations," and noting "[t]he non-

---

[3]     *See Thakur*, 2025 WL 3760650, at *3 (district court lacked jurisdiction over APA claim brought by putative class whose research grants were terminated, even though they lacked privity to sue government in contract); *Am. Ass'n of Physics Teachers, Inc. v. Nat'l Sci. Found.*, No. 25 Civ. 1923, 2025 WL 2615054, at *10 (D.D.C. Sept. 10, 2025) (court lacked jurisdiction under Tucker Act in APA action brought by indirect recipients of federal grants despite fact plaintiffs were not in privity with government and could not bring suit in Court of Federal Claims).

contractual source of Plaintiffs' rights is dispositive"). While the court also noted the subcontractors in that case would "not have standing to sue the government under the Tucker Act," the case did not turn on that point. 137 F.4th at 939. The court's decision was premised on its conclusion that the plaintiffs' claims were statutory or regulatory rather than contractual, and thus the Tucker Act was not implicated. *Id*. at 938-39

Further, the procedural posture in *Tootle* was entirely different, as it concerned a serviceman who requested only that the district court invalidate the findings of a physical evaluation board and correct his military service record. 446 F.3d at 169-71. He first brought his claim in the Court of Federal Claims, and when the government moved to dismiss the case on the grounds that his claim was "equitable," he then sought relief in the district court where the government again argued that it should be dismissed for lack of jurisdiction. 446 F.3d at 169-71. Had the district court found Tootle's case barred by the Tucker Act, the substance of his claims could not have been heard in any court. Here, the breach-of-contract claims that undergird Plaintiffs' APA claims are already being litigated in the Court of Federal Claims by the GDC.

The relevant Supreme Court precedent is *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984). There, a statute authorized an agency to set minimum prices dairy handlers must pay. *Id*. at 341-42. Congress provided "a mechanism by

which dairy handlers could obtain review of the Secretary's market orders" in court. *Id*. at 346. Consumers—rather than dairy handlers—tried to bring an APA action challenging a market order. The court of appeals—echoing Plaintiffs' argument and the court's holding here—concluded the APA claims were not precluded because of "the presumption favoring judicial review" and because preclusion would "leave consumers without a judicial remedy." *Id*. at 348-49. The Supreme Court reversed. "[W]hen a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons," the Supreme Court explained, "judicial review of those issues at the behest of other persons may be found to be impliedly precluded." *Id*. at 349.

So too here. Congress created a review scheme for direct recipients of grant funding. It would not be logical to allow indirect recipients to bring APA claims challenging the government's grant terminations while barring direct recipients of the grants from bringing those same claims. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (APA's preclusion-carveout provision "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes"). As the Supreme Court has long recognized, when Congress establishes a remedial scheme with limitations on the parties who can seek relief, the proper inference is not that other parties can seek relief without regard to the remedial scheme's limitations, but rather that other

21

parties cannot seek relief at all. *Block*, 467 U.S. at 345-49. Allowing suit by nonparties to contracts would frustrate Congress's intent to limit these claims to suits brought by parties to the contract.

## II. The Equitable Factors Favor a Stay Pending Appeal

The balance of equities and the public interest favor a stay pending appeal.

The government will be irreparably harmed absent a stay from this Court. Following the district court's order, the government has begun processing GDC's $205 million worth of reimbursement requests and will continue to process additional requests as they are submitted. But as in *NIH*, release of those grant funds " 'cannot be recouped' and are thus 'irrevocably expended.' " 145 S. Ct. at 2658 (quoting *Phillip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010)). The Court thus found irreparable harm to the government from the release of grant funds to the plaintiffs, who did "not state they will repay grant money if the Government ultimately prevails," and who contended they lacked the resources to continue to fund their project without the funds, a position "inconsistent with the proposition that they have the resources to make the Government whole for money already spent." *Id*. The same is true here; Plaintiffs did not offer to post security and the court did not require that they do so. And, as in *NIH*, Plaintiffs claim GDC cannot continue the Hudson Tunnel Project without the funding, suggesting they cannot repay the government for any expended funds. Thus, should the Government ultimately

prevail, any funds released to Plaintiffs would be "irrevocably expended." *Id.* at 2658.

On the other hand, Plaintiffs' financial injuries are reparable by GDC's parallel action in the Court of Federal Claims, through the recovery of money damages for past-due disbursements and potential additional money damages. In short, Plaintiffs' harm can be remedied by money damages in the venue where these claims belong. *See JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) ("[I]t is settled law that when an injury is compensable through money damages there is no irreparable harm.").

## CONCLUSION

This Court should grant a stay pending appeal, and an immediate administrative stay pending consideration of this motion.

Dated:  New York, New York
     February 9, 2026

          Respectfully,

          JAY CLAYTON
          United States Attorney for the
          Southern District of New York
          *Attorney for Defendants-Appellants*

    By: */s/ Tara Schwartz*
       TARA SCHWARTZ
       C. NNEKA NZEKWU
       BENJAMIN H. TORRANCE
       Assistant United States Attorney
       86 Chambers Street, Third Floor
       New York, New York 10007
       Telephone: (212) 637-2633/2737
       Email: tara.schwartz@usdoj.gov
           chibogu.nzekwu@usdoj.gov

       *Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the above-named counsel hereby certifies that this memorandum complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare it, this memorandum contains 5189 words.